Filed 11/16/16

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KEVYN THAXTON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STATE PERSONNEL BOARD,<br><br>    Defendant and Respondent;<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS AND REHABILITATION,<br><br>    Real Party in Interest and Appellant. | D068563<br><br><br><br>(Super. Ct. No. 37-2014-00009901-<br>CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Ronald S. Prager, Judge.  Reversed.

The Law Office of David M. Goldstein and David M. Goldstein for Plaintiff and

Respondent.

Alvin Gittisriboongul and Chian He for Defendant and Respondent.

Kamala D. Harris, Attorney General, Chris A. Knudsen, Celine M. Cooper, Christine B. Mersten and Jodi L. Cleesattle, Deputy Attorneys General, for Real Party in Interest and Appellant.

## I.

## INTRODUCTION

Plaintiff and respondent interest Kevyn Thaxton was employed as a corrections officer by appellant, the California Department of Corrections and Rehabilitation (CDCR). After being dismissed from his position, Thaxton filed an appeal with the State Personnel Board (the SPB), along with three other colleagues who were also dismissed in relation to the same incident that led to Thaxton's dismissal.

The SPB consolidated all four employees' appeals and scheduled a joint evidentiary hearing. Thaxton did not appear on the first day of the evidentiary hearing, and also failed to appear on the second day, although his attorney was present to represent him on both days. On the second day of the hearing, CDCR proffered the testimony of a process server to the effect that Thaxton had informed the process server that Thaxton was purposely avoiding service of CDCR's subpoena. Thaxton's attorney indicated that he would not accept service of the subpoena on Thaxton's behalf. After Thaxton's attorney refused to accept service of the subpoena, the administrative law judge (ALJ) overseeing the hearing ordered that Thaxton appear that afternoon. When the hearing resumed, Thaxton's attorney indicated that he had informed Thaxton of the ALJ's order, but Thaxton neither appeared nor provided any justification or explanation for his continued absence from the proceeding. The ALJ proceeded to dismiss Thaxton's appeal

on two independent grounds:  (1) that an SPB regulation requires the personal presence of the parties to an appeal, and provides that the failure of a party to be personally present is deemed a withdrawal of the party's appeal or action; and (2) that the same regulation requires that a party "proceed" with a hearing, and Thaxton's conduct in refusing to appear at the hearing demonstrated failure to proceed with the hearing, such that his appeal could be deemed withdrawn.  The SPB adopted the ALJ's decision.

Thaxton petitioned the trial court for a writ of mandate.  The trial court granted the petition, and effectively ordered that Thaxton be reinstated to his former position at CDCR and receive back pay and interest.[1]

CDCR challenges the trial court's granting of Thaxton's petition.  CDCR argues that the ALJ properly dismissed Thaxton's appeal because Thaxton failed to personally appear at the hearing, which CDCR contends is required by an SPB regulation, and/or because the ALJ acted within the scope of her authority in determining that Thaxton's conduct in failing to appear despite the ALJ's order that he appear constituted a failure to proceed with the hearing.  A party's failure to proceed at a hearing permits an ALJ to deem an appeal or action withdrawn pursuant to both a relevant statute and as well as the SPB regulation relied on by the ALJ.  Thus, CDCR argues, the trial court erred in

---

[1]    Although the trial court's judgment did not expressly state that Thaxton was to be reinstated, the judgment ordered the SPB to "set aside" its decision sustaining CDCR's dismissal, and ordered that Thaxton be given back pay and interest, lost employee benefits, and "all other right[s] pertaining to his civil service position."  The parties appear to agree that the effect of the trial court's judgment was to require that CDCR reinstate Thaxton to his former position.

granting Thaxton's petition for a writ of mandate. We agree, and reverse the trial court's judgment.[2]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Thaxton was a correctional officer employed by the CDCR at its Richard J. Donovan Correctional Facility. CDCR dismissed Thaxton and three other correctional officers, Sergeant Steven Vasquez, Officer Charles Hamilton, and Officer Laverne Steele, for dishonesty and other misconduct arising out of a use-of-force incident.

The Notice of Adverse Action filed with respect to the officers' dismissals alleged that they had conspired to submit false reports after a use-of-force incident, and that each of the officers had lied about the incident when questioned by investigators. All of the involved officers initially stood by the statements they had made in their reports concerning the incident. However, after having been served with the Notice of Adverse Action, during his *Skelly*[3] hearing, Thaxton contradicted his prior statements. Thaxton admitted that he had lied in his reports, and claimed that he had done so at the behest of Sergeant Vasquez.

Thaxton and the other officers appealed their dismissals to the SPB. The appeals were consolidated. Vasquez, Hamilton, and Steele were all represented by the same

---

[2]    The SPB also filed a brief in this appeal, arguing solely that the trial court exceeded its authority under Code of Civil Procedure section 1094.5 in granting relief to Thaxton. According to SPB, the trial court had jurisdiction only to set aside the SPB decision and order it to take further action by holding an evidentiary hearing, and that in ordering CDCR to reinstate Thaxton, the court exceeded its jurisdiction.

[3]    *Skelly v. State Personnel Bd.* (1974) 15 Cal.3d 194.

4

attorney, while Thaxton was represented by a different attorney. The SPB set the matter for an evidentiary hearing to begin on April 22, 2013.[4]

Prior to the hearing date, both CDCR and the officers identified Thaxton as a witness. CDCR identified Thaxton as a witness in its Pre-Hearing/Settlement Conference Statement and its Amended Statement. Thaxton listed himself as a witness in his Pre-Hearing/Settlement Conference Statement, Amended Statement, and Second Amended Statement.

The evidentiary hearing began on April 22, 2013. The first day of the hearing was conducted at the Richard J. Donovan Correctional Facility in order to facilitate the testimony of an inmate witness. Neither Vasquez nor Thaxton was present on the first day of the evidentiary hearing. However, prior to the hearing, Vasquez had requested an order excusing his attendance on the first day of the hearing, and his request had been granted. Attorneys representing all of the parties were present on the first day of the hearing.

On the second day of the hearing, Thaxton was again absent. An attorney for CDCR moved to dismiss Thaxton's appeal on the ground that he failed to appear at the hearing. During arguments regarding the motion, CDCR's attorney stated on the record

---

4    Thaxton apparently had objected to the consolidation of the appeals, arguing that consolidation would violate his due process rights. According to Thaxton, consolidation would violate his due process rights because he would be subjected to cross-examination by CDCR, as well as by the attorney for the other three appellants. An ALJ overruled Thaxton's objection to the consolidation of all four appeals, concluding that being "subject to additional cross-examination does not constitute a violation of [Thaxton's] due process rights."

that she had attempted to subpoena Thaxton, but that he had avoided service. She made a proffer that the process server could testify that Thaxton had conveyed to the process server that he was purposely avoiding service.

When the ALJ inquired of Thaxton's counsel concerning Thaxton's absence from the proceedings, Thaxton's attorney said that Thaxton's absence was "a matter of attorney/client confidence."

During the discussion of Thaxton's absence, the attorneys and the ALJ discussed the applicability of relevant civil service statutes, as well as section 58.3 of title 2 of the Code of Regulations (Rule 58.3), which requires a party to proceed at a hearing and provides that if the party does not proceed, that party's appeal or action shall be deemed withdrawn. The ALJ and Thaxton's attorney engaged in the following exchange:

> "ADMINISTRATIVE LAW JUDGE KING: And you're not willing to accept the subpoena on his behalf but you're willing to be here on his behalf[?]
>
> "MR. GOLDSTEIN: I have not been asked to accept a subpoena on his behalf by the institution. If they attempted to do that, I would speak with my client. I don't have the authority. I am here as his representative. I'm in contact with him, but I would discuss it with him."

At that point, counsel for CDCR advised that she was in possession of a subpoena for Thaxton and asked Thaxton's attorney to discuss the matter with his client and accept the subpoena on Thaxton's behalf. The ALJ and the attorneys then spoke off the record. Upon going back on the record, the ALJ stated that it was her determination that Rule 58.3 required Thaxton's presence. She ordered him to appear by 1:00 p.m. that day, after a lunch break, in order to give him some time to make his way to the hearing location.

6

Thaxton's attorney continued to argue that Thaxton's presence was not required by regulation or statute, that he was there on Thaxton's behalf as his representative, and that the attorney being present and proceeding on behalf of the party was sufficient under the relevant regulations. The ALJ noted, "He's the one that brought this whole matter here. He needs to be present." The ALJ reaffirmed that she was ordering Thaxton to appear in person after the lunch break, and warned his attorney that Thaxton's appeal might be dismissed if he failed to appear. Thaxton's attorney requested a five-minute break in order to speak with Thaxton, a request the ALJ granted, and then went off the record again. Upon going back on the record, the hearing continued, and Thaxton's attorney resumed his cross-examination of a witness. Neither the ALJ nor Thaxton's attorney said anything on the record about the outcome of Thaxton's attorney's attempt to reach Thaxton during the break.

Although the ALJ had ordered Thaxton to appear by 1:00 p.m., she permitted the attorneys to examine a witness until a few minutes before 1:00 p.m., and indicated that they would break for lunch at the conclusion of that examination. She said, "Mr. Goldstein, I just wanted to confirm, I don't know if you had a chance to speak with your client, but you are not willing to accept a subpoena on his behalf as we sit here right now, correct?" Thaxton's attorney said that he would "ask him at this moment," but admitted that he did "not have the authority to do so" yet. The ALJ reiterated that she was ordering Thaxton to appear when the parties reconvened after lunch: "[A]nd if he is [present], then we proceed. And if he's not, then it's — the appeal is considered withdrawn."

7

After the lunch recess, the ALJ inquired:  "And, Mr. Goldstein, do you have any indication if he's planning on (inaudible)?"  Thaxton's attorney responded, "He is not present, Judge.  I'd like you to know that I complied with court orders."  Counsel also stated that he was prepared to examine another witness.  The ALJ replied, "Well, the order was that Mr. Thaxton would appear by 2:15 this afternoon or else his appeal would be dismissed.  He is not present and counsel has not indicated that he is on his way or otherwise suggested he will be here this afternoon.  Therefore, the appeal by Kevyn Thaxton is hereby dismissed."

The ALJ issued a proposed statement of decision stating that Rule 58.3 requires a party to proceed at a hearing by being personally present, and does not permit a party to proceed through a representative, alone.  The ALJ also determined that even if the relevant statutes and regulations permitted Thaxton to authorize his attorney to appear and proceed on his behalf, in this situation, Thaxton had not so authorized his attorney to proceed on his behalf in full, in that Thaxton had not authorized his attorney to accept a subpoena on his behalf, and Thaxton was refusing to make himself available to be examined at the hearing.  On this basis, the ALJ concluded that Thaxton was *not* prepared to proceed at the hearing:

> "[T]here was nothing offered other than [counsel's] assertion that he was so authorized [to appear on Thaxton's behalf].  [Counsel's] subsequent refusal to accept Respondent's subpoena on Appellant Thaxton's behalf was contrary to his assertion that he was authorized to appear on Appellant Thaxton's behalf.  In doing so, [counsel] admitted that he was either not authorized or not willing to act fully in Appellant Thaxton's stead at the hearing.  Appellant Thaxton cannot hide behind section 19579 to avoid personally appearing at the hearing, then claim that his representative is not authorized or

8

not willing to act fully on his behalf at the hearing. To allow this would frustrate the intent of both section 19579 and SPB Rule 58.3, subsection (b), which is to ensure that all parties are ready to proceed fully at the hearing, or risk dismissal of their appeal. [¶] Appellant Thaxton failed to proceed at [the] hearing and failed to show good cause for a continuance. Accordingly, pursuant to SPB Rule 58.3, subsection (b), his appeal from the dismissal filed with the SPB . . . is deemed withdrawn and his appeal is hereby dismissed."[5]

The SBP adopted the ALJ's proposed decision on October 24, 2013. Thaxton filed a petition for rehearing with the SBP. In his petition, Thaxton argued that Government Code section 19579 (Section 19579) does not require that he be personally present at the hearing, and that dismissal of his appeal was improper as long as his attorney was present at the hearing. He further argued that his attorney had been authorized to proceed on his behalf. Thaxton did not address Rule 58.3. CDCR responded that the Government Code and pertinent regulation mandate dismissal when a party fails to personally appear at an SPB hearing, and that regardless, in this case, Thaxton had failed to fully proceed at the hearing. The SBP denied Thaxton's petition for rehearing in January 2014.

Thaxton filed a petition for a writ of mandamus in the Superior Court on April 4, 2014. Thaxton asserted that his appeal to the SPB had been improperly dismissed

---

[5] With respect to Vasquez, Hamilton, and Steele, the other three officers whose appeals were being heard, the ALJ found that there was insufficient evidence against them to support the charges of inexcusable neglect of duty, dishonesty, willful disobedience, discourteous treatment, or other failure of good behavior. In making these findings, the ALJ ruled that Thaxton's testimony during his *Skelly* hearing was inadmissible against the other officers because it was hearsay, and did not fall within the hearsay exception for declarations against interest. The ALJ revoked the three officers' dismissals.

because the relevant statutes and regulations permitted him to proceed through his representative attorney, and did not require that he be present.

In response, CDCR argued that the dismissal was proper under the relevant Code and regulation provisions. Specifically, CDRC contended that Rule 58.3, which does not reference "representatives" but refers only to "parties," requires the dismissal of an employee's case where the employee fails to personally appear and proceed at the evidentiary hearing. CDCR also argued that Thaxton had not shown good cause for his failure to appear.

The trial court granted Thaxton's petition for a writ of mandamus, concluding that the express language of Section 19579 did not require Thaxton's personal attendance at the evidentiary hearing. The court further concluded that Rule 58.3 and section 57.1 of title 2 of the Code of Regulations (Rule 57.1) did not apply to Thaxton's evidentiary hearing because those regulations "only deal with prehearing/settlement conferences, not an appeal." The trial court entered judgment in favor of Thaxton on June 5, 2015, directing the SBP to set aside its October 24, 2013 decision dismissing Thaxton's SPB appeal. The trial court also directed CDCR to reinstate Thaxton and pay him "back pay and interest, lost employee benefits and all other right[s] pertaining to his civil service position, reasonable attorney's fees, costs of suit and any other relief to which he is entitled."[6]

---

[6] The trial court directed CDCR to reinstate Thaxton even though the parties had not addressed whether such relief was appropriate with respect to Thaxton's petition for a writ of mandamus.

On June 26, 2015, CDCR filed a motion for clarification in the trial court with respect to the relief granted in the matter, and requesting that the matter be remanded to the SPB for a full evidentiary hearing on the merits. However, on July 30, 2015, CDCR filed a notice of appeal from the trial court's judgment. As a result, in September 2015, the trial court denied CDCR's motion for clarification on the ground that the trial court lost jurisdiction over the matter once the notice of appeal was filed.

III.

DISCUSSION

The ALJ offered two independent reasons for dismissing Thaxton's appeal. First, the ALJ concluded that an SPB regulation—i.e., Rule 58.3—requires that a party be personally present at any SPB evidentiary hearing, and since Thaxton did not personally appear at the hearing, Rule 58.3 required that his appeal be dismissed. In the alternative, the ALJ concluded that under the relevant statutory and regulatory provisions, a party must "proceed" at the hearing, and that Thaxton's conduct in refusing to appear at the hearing in person and be examined, constituted a failure "to proceed," such that dismissal of the appeal was warranted under both the statutory and related regulatory schemes.[7]

---

[7] Specifically, the ALJ referred to Rule 58.3, as well as Section 19579. Again, Rule 58.3 provides in relevant part:

> "(b) Failure of any party to proceed at a hearing or a prehearing/settlement conference, shall be deemed a withdrawal of the appeal or the action, unless the hearing is continued for good cause."

Section 19579, which appears to be the statutory basis for Rule 58.3, provides:

11

Although the parties focus on whether the relevant regulation, Rule 58.3, *requires* a party's personal appearance at every hearing or whether the regulation permits a party to proceed through a representative, we need not address that question in this appeal because we conclude that the ALJ properly dismissed Thaxton's appeal on the ground that under the circumstances of this case, he failed "to proceed" at the hearing, as is clearly required by both Rule 58.3 and Section 19579.[8]

---

> "Failure of either party (the employee, the employer, or their representatives) to proceed at the hearing shall be deemed a withdrawal of the action or appeal, unless the hearing is continued by mutual agreement of the parties, or upon showing of good cause."

As is clear from the text of Rule 58.3, the trial court was incorrect in concluding that Rule 58.3 did not apply to permit the ALJ to dismiss Thaxton's appeal because that rule "only deal[s] with prehearing/settlement conferences, not an appeal." The language of Rule 58.3 requires a party to proceed at "a hearing *or* a prehearing/settlement conference" (italics added). The ALJ therefore did not err in relying on Rule 58.3 in assessing Thaxton's conduct in relation to the evidentiary hearing.

[8] Neither Rule 58.3 nor Section 19579 uses the words "personal appearance" or something similar to expressly require that a party make a personal appearance at an SPB appeal hearing. Rather, both provisions require a party "to proceed" with a hearing (and/or settlement conference in the case of Rule 58.3), without further explanation of what the term "to proceed" means. Further, Section 19579 appears to allow an employee or employer "to proceed" at a hearing by way of a representative, rather than personally, since it defines a "party" as "the employee, the employer, or their representatives." Rule 58.3, however, refers only to a "party" being required to proceed at a hearing and/or settlement conference. Thus, at a minimum, Section 19579 and Rule 58.3 are ambiguous as to whether they *require* the personal appearance of a party. Further, because the regulation appears to be more narrow than the statute with respect to its reference solely to a "party," without any reference to a "representative," there is a question as to whether the authority granted to the SPB to dismiss an appeal or action by virtue of Rule 58.3 can be harmonized with the authority granted the SPB to dismiss an appeal or action by virtue of Section 19579, or whether the provisions may conflict. In other words, there remains a question as to whether the regulation permits the SPB to dismiss some appeals or actions that the SPB would not be permitted to dismiss under the terms of the statutory provision, such as where a party attempts to proceed solely by the appearance of a representative, and, if so, whether the SPB's action pursuant to such a regulation would be authorized by

12

A. *Relevant legal standards*

The SPB is a "statewide administrative agency which is created by, and derives its adjudicatory power from, the state Constitution. (Cal. Const., art. VII, §§ 2 [membership and compensation of board], 3 ['(a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall . . . review disciplinary actions']. . . .) Under that constitutional grant, the [SPB] is empowered to 'review disciplinary actions.' In undertaking that review, the [SPB] acts in an adjudicatory capacity. 'The State Personnel Board is an agency with adjudicatory powers created by the California Constitution.' [Citation.] As such the [SPB] acts much as a trial court would in an ordinary judicial proceeding. Thus, the [SPB] makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of the [SPB] are entitled to judicial deference. The record must be viewed in a light most favorable to the decision of the [SPB] and its factual findings must be upheld if they are supported by substantial evidence." (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823.) "In addition, the [SBP's] exercise of discretion must be upheld unless it abuses that discretion." (*Id.* at pp. 823-824.) An "abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).) Further, the scope of review on appeal from a judgment entered by an administrative

statute. We think it is worth noting that if the Legislature does intend for the parties to an SPB appeal be personally present at an evidentiary hearing, then the Legislature could consider making that intention more clear by including such terms in the statute.

13

agency is identical to the scope of review applied by the trial court.  (*Boreta Enterprises, Inc. v. Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94-95.)

In this situation, however, the above referenced standards are not sufficient to fully resolve the issue before us.  "The standards of review for questions of pure fact and pure law are well developed and settled."  (*People v. Cromer* (2001) 24 Cal.4th 889, 893 (*Cromer*).)  The standard of review for discretionary judicial decisions is similarly well-settled.  (See, e.g., *People v. Giminez* (1975) 14 Cal.3d 68, 72 [setting out various statements of the abuse of discretion standard of review].)  However, "[s]electing the proper standard of appellate review becomes more difficult when the . . . determination under review resolves a mixed question of law and fact.  Mixed questions are those in which the ' "historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." ' "  (*Cromer*, *supra*, 24 Cal.4th at p. 894.)

The question at issue here is whether Thaxton's conduct in failing to appear at the hearing after the ALJ ordered that he appear constitutes a "[f]ailure . . . to proceed," which would allow dismissal of his appeal under Section 19579 and the corresponding SPB regulation, Rule 58.3.  Whether Thaxton "[f]ail[ed] . . . to proceed at the hearing" is a mixed question of law and fact, since it requires application of a rule of law to established facts.

" 'Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied.  If the pertinent inquiry

14

requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384.) "[I]n most instances, mixed questions of fact and law are reviewed de novo—with some exceptions, such as when the applicable legal standard provides for a ' "strictly factual test, such as state of mind." ' [Citations] ' "This is so because usually the application of law to fact will require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles." ' " (*Id.* at p. 385.)

We conclude that under these rules, the applicable standard of review with respect to the trial court's determination that Thaxton failed to proceed at his evidentiary hearing is de novo. The inquiry requires critical consideration, albeit in a factual context, of the legal principles animating Section 19579 and the related regulation found in Rule 58.3.

B. *Application*

As a preface to our consideration of whether, under the circumstances demonstrated in this record, Thaxton "fail[ed] . . . to proceed" at his hearing, we provide some context regarding the SPB evidentiary hearing scheme set out by the Legislature. "The legislative scheme governing State Personnel Board review of disciplinary actions appears in the Government Code and is described . . . in *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] (*Skelly*)." (*State Personnel Bd. v. Department of Personnel Admin*. (2005) 37 Cal.4th 512, 521 (*State Personnel Bd. 2005*).)

15

Under the scheme, " 'the appointing power [i.e., the employer] *must* serve upon the employee and file with the Board a written notice specifying: (1) the nature of the punishment, (2) its effective date, (3) the causes therefor, (4) [a statement advising the employee of the right to answer the charges], and (5) the employee's right to appeal. (§ 19574.) [¶] Except in cases involving minor disciplinary matters, the employee has a right to an evidentiary hearing to challenge the action taken against him. To obtain such a hearing, the employee must file with the Board a written answer to the notice of punitive action . . . . The answer is deemed to constitute a denial of all allegations contained in the notice which are not expressly admitted as well as a request for a hearing or investigation. (§ 19575; [citation].) Failure to file an answer within the specified time period results in the punitive action becoming final. (§ 19575.)" (*State Personnel Bd. 2005*, *supra*, 37 Cal.4th at pp. 521-522.)

" 'In cases where the affected employee files an answer within the prescribed period, the Board, or its authorized representative, must hold a hearing within a reasonable time. (§ 19578; [citation].) As a general rule, the case is referred to the Board's hearing officer [ALJ] who conducts a hearing and prepares a proposed decision which may be adopted, modified or rejected by the Board. (§ 19582.)' " (*State Personnel Bd. 2005*, *supra*, 37 Cal.4th at p. 522.)

According to statute, "[t]he [SPB] shall notify the parties of the time and place of the hearing," and "[t]he hearing shall be conducted in accordance with the provisions of Section 11513 of the Government Code, *except that the employee and other persons may be examined as provided in Section 19580*, and the parties may submit all proper and

16

competent evidence against or in support of the causes." (Gov. Code, § 19578, italics

added.)[9]  In turn, Government Code section 19580 provides:

> "Either by deposition or at the hearing the employee may be
> examined and may examine or cause any person to be examined
> under Section 776 of the Evidence Code."[10]

---

[9]      Government Code section 11513 applies to certain agency adjudicatory proceedings (see Gov. Code, § 11501) and provides general evidentiary rules for use in such proceedings as follows:

> "(a) Oral evidence shall be taken only on oath or affirmation.
>
> "(b) Each party shall have these rights:  to call and examine witnesses, to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues even though that matter was not covered in the direct examination; to impeach any witness regardless of which party first called him or her to testify; and to rebut the evidence against him or her.  *If respondent does not testify in his or her own behalf he or she may be called and examined as if under cross-examination.*
>
> "(c) The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions.
>
> "(d) Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.  An objection is timely if made before submission of the case or on reconsideration.
>
> "(e) The rules of privilege shall be effective to the extent that they are otherwise required by statute to be recognized at the hearing.
>
> "(f) The presiding officer has discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time." (Italics added.)

17

If, upon the conclusion of the hearing, " 'the Board determines that the cause or causes for which the employee was disciplined were insufficient or not sustained by the employee's acts or omissions, or that the employee was justified in engaging in the conduct which formed the basis of the charges against him, it may modify or revoke the punitive action . . . . (§ 19583.) . . . [¶] In the case of an adverse decision by the Board, [either party] may petition . . . for a rehearing. (§ 19586.) As an alternative or in addition to the rehearing procedure, [either party] may seek review of the Board's action by means of a petition for writ of administrative mandamus filed in the superior court.' " (*State Personnel Bd. 2005*, *supra*, 37 Cal.4th at p. 522.)

It is within this statutory framework that we consider the statute that authorizes the SPB's hearing officer to dismiss an employee's appeal on procedural grounds. Again, Section 19579 provides, in full: "Failure of either party (the employee, the employer, or their representatives) to proceed at the hearing shall be deemed a withdrawal of the action or appeal, unless the hearing is continued by mutual agreement of the parties, or upon showing of good cause." Subdivision (b) of the SPB's Rule 58.3, which is generally consistent with, although not identical to, Section 19579, provides: "(b) Failure of any party to proceed at a hearing or a prehearing/settlement conference, shall be deemed a withdrawal of the appeal or the action, unless the hearing is continued for good cause." Both of these provisions permit the SPB to dismiss an employee's appeal or an employer's personnel action on the procedural ground that the appeal or action is deemed

10    Evidence Code section 776 provides rules to permit a party to examine an adverse party as if cross-examining the adverse party.

18

withdrawn as a result of a party's conduct vis-à-vis the evidentiary hearing. Significantly, both the statute and the regulation require the SPB to deem the "[f]ailure . . . to proceed" at a hearing to be a withdrawal of the action or appeal.

One can discern from the statutory framework that the purpose of an SPB evidentiary hearing is to allow an employee to challenge an employment action taken against him by permitting both parties to present evidence regarding that action. To effectuate this purpose, the statutory scheme gives the employer the right to examine the employee (Gov. Code, § 19580). Here, not only did CDCR indicate that it intended to call Thaxton to testify, but Thaxton placed his own name on his witness list, indicating that Thaxton's personal presence at the hearing and his testimony would be crucial to the resolution of the evidentiary proceeding that Thaxton initiated by way of his appeal.[11] Thaxton's placement of his own name on his list of witnesses likely suggested to CDCR that Thaxton intended to personally appear and testify. However, Thaxton subsequently refused to accept service of a subpoena from CDCR, and he was not present on the first day of the hearing. Thaxton had neither sought nor obtained an order permitting him not to be personally present on the first day of the hearing. At that point, it began to become apparent that Thaxton did not intend to make himself available for examination at the hearing. Further, Thaxton subsequently refused to authorize his attorney to accept a subpoena on his behalf, and ultimately failed to appear after having been ordered to do so

_____

[11]    CDCR clearly believed that Thaxton's testimony was necessary to the full adjudication of the appeal, at least in part because Thaxton had admitted to having lied in his report about what had occurred, at the behest of another employee.

19

by the ALJ. On this record, it is clear that Thaxton was unwilling to make himself available to be examined by CDCR at the evidentiary hearing, despite the fact that CDCR was statutorily entitled to call him as a witness. Thaxton's conduct in this regard amounted to a failure to proceed with the hearing.

It was only after Thaxton refused to comply with the ALJ's order that he appear at the hearing (or provide any explanation about his inability to appear when ordered) that the ALJ concluded that dismissal of his appeal was appropriate. Given this record, we agree with the ALJ's determination that to permit Thaxton to intentionally avoid service of a subpoena, and ultimately violate an order of the hearing officer that he appear, would frustrate the very purpose of the SPB adjudicatory hearing scheme—a hearing process that *he initiated* by way of his appeal. An employee cannot be allowed to invoke the process and then avoid fully participating in the process by preventing the other party from exercising its right to examine him without consequence.

To the extent that Thaxton suggests that it was CDCR's responsibility to effectuate service of a subpoena on him, and that CDCR, and not he, was the party that was not ready to proceed at the hearing, we reject such a proposition. CDCR made a proffer that it could present evidence demonstrating that it had attempted to effectuate service of a subpoena on Thaxton on more than one occasion, and that Thaxton indicated to the process server that he was intentionally avoiding service. Further, if there had been any question whether Thaxton was purposely avoiding service of the subpoena and intended *not to be examined at the hearing*, that question was answered in the affirmative when Thaxton failed to authorize his attorney to accept service of the subpoena on his behalf,

20

and failed to appear or provide any reasonable explanation as to his inability to appear in response to the ALJ's order requiring his presence at the hearing. It is clear from this record that, contrary to Thaxton's accusations against CDCR in briefing on appeal, it was *him* who was the party engaging in gamesmanship with respect to the SPB proceeding.

We conclude that the ALJ did not err in her determination that Thaxton "failed to proceed" at the evidentiary hearing, and that his appeal should therefore be deemed withdrawn under both the statutory authorization for such action (Section 19579) and the regulatory authorization for it (Rule 58.3).[12] Dismissal of Thaxton's appeal was appropriate under these circumstances. The trial court's granting of Thaxton's petition for a writ of mandate requiring the SPB to order Thaxton's reinstatement was erroneous.[13]

---

[12] We disagree, however, with the ALJ's suggestion that Thaxton's failure to authorize his attorney to accept service of a subpoena on his behalf meant that Thaxton had failed to adequately authorize his attorney to represent him at the hearing. We do not intend to suggest that an attorney who represents a party in a judicial or quasi-judicial proceeding must accept service of a subpoena on the party's behalf. In this case, however, Thaxton's refusal to authorize his attorney to accept service of the subpoena was a factor demonstrating that Thaxton intended not to make himself available to testify at the evidentiary hearing—a factor on which the ALJ could rely in reaching the ultimate conclusion that Thaxton had failed to proceed at the hearing.

[13] We note that the relief that the trial court ordered—i.e., Thaxton's reinstatement to his former position at CDCR—was erroneous, even if the trial court had been correct in concluding that the petition for a writ of mandate should be granted. At most, the trial court should have directed the SPB to set aside its decision and grant Thaxton a hearing on the merits so that *the SPB* could determine, as an initial matter, whether Thaxton was entitled to reinstatement.

IV.

DISPOSITION

The judgment of the trial court is reversed.  Appellant is awarded costs on appeal.


                                                                    AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.